UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

GREGORY MUNCY,  )
(Social Security No. XXX-XX-7188),  )
    )
      Plaintiff,  )
    )
      v.  )  4:10-cv-122-WGH-TWP
    )
MICHAEL J. ASTRUE, COMMISSIONER,  )
SOCIAL SECURITY ADMINISTRATION,  )
    )
      Defendant.  )

## MEMORANDUM DECISION AND ORDER

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, upon the Consents filed by the parties (Docket Nos. 13, 16) and an Order of Reference entered by District Judge Tanya Walton Pratt on February 18, 2011 (Docket No. 18).

### I. Statement of the Case

Plaintiff, Gregory Muncy, seeks judicial review of the final decision of the agency, which found him not disabled and, therefore, not entitled to Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). 42 U.S.C. §§ 416(i), 423(d); 20 C.F.R. § 404.1520(f). The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

Plaintiff filed an application for DIB on April 5, 2007, alleging a disability onset date of December 4, 2006.[1]  (R. 110-14).  The agency denied Plaintiff's application both initially and on reconsideration.  (R. 68-71, 76-82).  Plaintiff appeared and testified at a hearing before Administrative Law Judge L. Zane Gill ("ALJ") on October 6, 2009.  (R. 34-54).  Plaintiff was represented by an attorney; also testifying was a vocational expert.  (R. 34).  On February 12, 2010, the ALJ issued his opinion finding that Plaintiff was not disabled because he retained the residual functional capacity ("RFC") to perform a significant number of jobs in the regional economy.  (R. 13-27).  The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner.  (R. 1-3).  20 C.F.R. §§ 404.955(a), 404.981.  Plaintiff then filed a Complaint on October 5, 2010, seeking judicial review of the ALJ's decision.

## II. Statement of the Facts

**A. Vocational Profile**

Born on April 3, 1962, Plaintiff was 47 years old at the time of the ALJ's decision, with at least a high school education.  (R. 26-27).  His past relevant work experience included work as an electrician apprentice, general maintenance mechanic, and process inspector.  (R. 26).

---

[1] Plaintiff also filed a request for Supplemental Security Income ("SSI") benefits (R. 115-17), which was denied because his family's earnings exceeded the amount to be eligible for SSI benefits (R. 57-64).  The record does not reveal that Plaintiff appealed the SSI decision, and the ALJ did not consider a claim for SSI in his decision.  (R. 13).  Therefore, Plaintiff's claim for SSI benefits is not before the court.

**B. Medical Evidence**

**1. Plaintiff's Impairments**

Plaintiff underwent a lumbar discectomy on November 19, 2004. (R. 199-201). He subsequently returned to work. (R. 184).

On September 11, 2006, Plaintiff reported worsening back pain to his treating physician, Robert Baker, M.D., who referred him for testing and evaluation by an orthopedic specialist. (R. 275).

On September 15, 2006, John B. Chambers, M.D., the orthopedic specialist that Plaintiff had been referred to, examined Plaintiff. (R. 242). Plaintiff was doing well clinically, but had experienced some mechanical back pain. Dr. Chambers found that Plaintiff had a restricted range of motion, but was neurologically intact. (R. 242). Dr. Chambers diagnosed him with lumbar spondylosis. (R. 242). He recommended non-narcotic pain relievers and conservative treatment, including physical therapy. (R. 242).

On November 3, 2006, a nerve conduction study performed on Plaintiff's legs showed mild right L5 and S1 radiculopathy and moderate left L5 radiculopathy. (R. 292).

On December 20, 2006, Plaintiff underwent an MRI of his cervical spine. (R. 234-35). It showed mild degrees of central canal and neuroforaminal stenosis (narrowing of the spinal canal and nerve passages). (R. 234). There was no evidence of large disc herniation, extrusion. or protrusion. (R. 235).

Plaintiff complained of lower back pain, fecal leakage, and bladder incontinence to Dr. Baker on January 10, 2007. (R. 269-70). Dr. Baker referred him for an MRI. (R. 270).

An MRI of Plaintiff's lumbar spine was then performed on January 11, 2007, which showed multi-level mild to severe neuroforaminal stenosis, with no evidence of large disc herniation, extrusion, or scarring from his previous surgery. (R. 232-33). At the L5-S1 level, there was a right disc bulge, but it did not affect the thecal sac or nerve root. (R. 232). Also, at that level the report concluded there was a "severe bilateral neuroforaminal stenosis primarily due to facet degenerative disease and broad based disc bulge." (R. 232).

Darla Schooler, M.D., another of Plaintiff's treating physicians, evaluated Plaintiff's MRIs and examined him on January 26, 2007. (R. 236-39). Plaintiff had complaints of lower back pain which radiated into his buttocks and legs; Plaintiff also alleged moderate neck pain and tingling in his hands and fingers. (R. 236). Dr. Schooler noted that Plaintiff's December 2006 MRI showed mild degenerative changes with no nerve or cord compression. (R. 237). His January 2007 MRI, according to Dr. Schooler, likewise showed degenerative disc disease without nerve compression. (R. 236). On examination, Dr. Schooler found that Plaintiff had some absent or decreased reflexes in his legs. (R. 238). She observed that Plaintiff had normal strength throughout and normal sensation. (R. 238). She opined that Plaintiff's polyneuropathy was responsible for most of Plaintiff's symptoms. (R. 238). Dr. Schooler recommended that Plaintiff lose weight and stop smoking as a means to relieve his back pain. (R. 238-39).

In February 2007, Plaintiff returned to Dr. Baker and continued thereafter to see him on a regular basis. (R. 264-68; 302-312). In those visits, Plaintiff reported foot, lower back and leg pain, weakness, fatigue, excessive thirst, waking at night because of pain and stiffness and shaking if he waited too long to eat. (R. 265; 267; 304-05).

A consultative examiner, Kinzi Stevenson, M.D., evaluated Plaintiff on June 2, 2007. (R. 250-55). Plaintiff reported constant pain, made worse by bending and lifting. (R. 250). Plaintiff explained that physical therapy had made his pain worse. (R. 250). Plaintiff was diagnosed with diabetes, but he was not using insulin. (R. 250). He informed Dr. Stevenson that he could stand for only ten to 15 minutes at a time, and 45 minutes total in an eight-hour work day, and he could walk for one block. (R. 251). Plaintiff stated that sitting caused pain in his lower back and leg. (R. 251). He could drive short distances or climb short intervals of stairs. (R. 251). Plaintiff further informed the doctor that he could sweep, mop, vacuum, and cook without any difficulty. (R. 251). In addition, he stated that he was able to mow the lawn using a riding lawnmower. (R. 251). Plaintiff was currently 68-1/2 inches tall and weighed 249 pounds. (R. 252). Dr. Stevenson observed that Plaintiff walked normally. (R. 252-53). She noted that Plaintiff had no difficulty getting on or off of the exam table or getting up and out of his chair. (R. 252). Dr. Stevenson also noted that Plaintiff bent over without difficulty. (R. 252). On examination, Dr. Stevenson found that Plaintiff had intact strength and normal sensation. (R. 253). His reflexes were normal. (R. 253). Plaintiff scored positively on a straight-leg raising test on both

sides. (R. 253). Plaintiff did report back pain during the exam, but there was no decreased range of motion. (R. 253). Based on her exam, Dr. Stevenson concluded that Plaintiff could lift and carry 20 pounds occasionally. (R. 253). She further opined that Plaintiff required less than eight hours of walking in an eight-hour work day, but had no limitations in sitting or standing. (R. 253). Nor did Plaintiff, according to Dr. Stevenson, require any limitations in bending, stooping, crouching, handling, reaching, or grasping. (R. 253-54).

In August 2008, Dr. Baker ordered a laboratory test called the "HLA-B27." (R. 303). Shortly thereafter, Plaintiff's pain medication was changed to OxyContin. (R. 303).

### 2. State Agency Review

A state agency medical consultant, F. Lavallo, M.D., completed a Physical Residual Functional Capacity Assessment on June 19, 2007. (R. 256-63). Dr. Lavallo concluded that Plaintiff could occasionally lift 20 pounds, frequently lift ten pounds, and could sit and stand or walk for about six hours each in an eight-hour work day. (R. 257). Plaintiff was restricted to only occasionally climbing, balancing, stooping, kneeling, crouching, or crawling. (R. 258). Plaintiff had no manipulative limitations. (R. 259). On August 25, 2007, a second state agency medical consultant, Fernando R. Montoya, M.D., concurred with Dr. Lavallo's findings. (R. 298).

### III. Standard of Review

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson*, 402 U.S. at 399-400. Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's decision denying benefits. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

### IV. Standard for Disability

In order to qualify for disability benefits under the Act, Plaintiff must establish that he suffers from a "disability" as defined by the Act. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations set out a sequential five-step test the ALJ is to perform in order to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. The ALJ must consider whether the claimant: (1) is presently employed; (2) has a severe impairment or combination of impairments; (3) has an impairment that meets or equals an impairment listed in the regulations as being so severe as to

preclude substantial gainful activity; (4) is unable to perform his/her past relevant work; and (5) is unable to perform any other work existing in significant numbers in the national economy. *Id.* The burden of proof is on Plaintiff during steps one through four, and only after Plaintiff has reached step five does the burden shift to the Commissioner. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## V.  The ALJ's Decision

The ALJ concluded that Plaintiff was insured for DIB through December 31, 2012; Plaintiff also had not engaged in substantial gainful activity since the alleged onset date. (R. 15). The ALJ found that, in accordance with 20 C.F.R. § 404.1520, Plaintiff had three impairments that are classified as severe: (1) degenerative disc disease of the cervical and lumbar spine; (2) carpal tunnel syndrome; and (3) diabetes melitus with neuropathy. (R. 15). The ALJ concluded that these impairments did not meet or substantially equal any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17). Additionally, the ALJ opined that Plaintiff's allegations regarding the extent of his limitations were not fully credible. (R. 19-25). Consequently, the ALJ concluded that Plaintiff retained the following RFC: (1) lift, carry, push, and pull 20 pounds occasionally and ten pounds frequently; (2) stand/walk for four hours each and sit for six hours in an eight-hour work day; (3) requires an at station sit-stand option; (4) occasionally use foot controls; (5) occasionally handle, finger, and feel bilaterally; (6) occasionally stoop and bend; (7) never climbing ladders, ropes, or scaffolds; and (8) no more than a concentrated exposure to unprotected heights and moving machinery. (R. 18). Finally, the ALJ concluded that Plaintiff could

perform a full range of unskilled work. (R. 18). The ALJ opined that Plaintiff did not retain the RFC to perform his past work. (R. 26). However, Plaintiff retained the RFC to perform a significant number of jobs in the regional economy, including courier (1,100 jobs) and storage clerk (600 jobs). (R. 27). The ALJ concluded by finding that Plaintiff was not under a disability. (R. 27).

## VI. Issues

Plaintiff has essentially raised four issues. The issues are as follows:

1. Whether the ALJ disregarded objective medical evidence.
2. Whether Plaintiff's impairment met a listing.
3. Whether the ALJ's RFC findings are supported by substantial evidence.
4. Whether the ALJ's credibility assessment is patently wrong.

**Issue 1:**   **Whether the ALJ disregarded objective medical evidence.**

Plaintiff's first argument is that the ALJ committed error when he failed to accurately describe Plaintiff's MRI results, failed to account for testing results that were positive for the HLA-B27 gene, and failed to take into consideration Plaintiff's obesity. With respect to the January 2007 MRI of Plaintiff's lumbar spine, the ALJ did specifically mention the report, but Plaintiff argues that the ALJ erred because he failed to note that the MRI found severe bilateral neuroforaminal stenosis at L5-S1. (R. 232). The ALJ, in this instance, accurately described the entire "Impression" section of the MRI report. (R. 21, 233). The fact that the ALJ did not transcribe the entire report is not an error. The ALJ clearly considered the fact that Plaintiff's MRI revealed stenosis when he

examined whether Plaintiff's impairment met Listing 1.04 (R. 17-18) and in assessing Plaintiff's RFC (R. 21).

As for the positive test for the HLA-B27 gene, Plaintiff has not pointed to any medical opinions in the record that reveal the significance of this finding. It appears that the presence of the HLA-B27 gene is indicative of a greater risk of developing spinal problems. (Memorandum in Support of Commissioner's Decision at 7). However, Plaintiff must demonstrate that he suffers actual limitations that render him unable to engage in substantial gainful activity, and a positive result for this test does not aid Plaintiff in meeting his burden.

Plaintiff's final argument concerning the medical evidence is that the ALJ disregarded Plaintiff's obesity. The gist of Plaintiff's argument is that a Disability Determination and Transmittal form listed obesity as a "secondary diagnosis" (R. 55), and the ALJ was, therefore, bound to consider Plaintiff's obesity. Plaintiff is correct that Listing 1.00q, as well as SSR 02-1p, require an ALJ to consider obesity in combination with all of the other impairments in determining if an individual is disabled. Additionally, Plaintiff is correct that Dr. Schooler found that Plaintiff weighed 249 pounds and was 70 inches tall. (R. 238). However, what Plaintiff fails to mention is that Dr. Schooler did not find that Plaintiff was limited by his obesity or that it had any impact whatsoever on Plaintiff. In fact, the court has been unable to locate any medical record that indicates that Plaintiff was suffering from limitations due to obesity. Consequently, the ALJ did not err by failing to discuss obesity given that no doctors have opined that Plaintiff's obesity had any impact on him.

**Issue 2:** **Whether Plaintiff's impairment met a listing.**

Next, Plaintiff argues that the ALJ erred by failing to conclude that his impairment met one of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. In order for an individual to be disabled under a particular listing, his impairment must meet each distinct element within the listing. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). And, it is important to remember that at step three, the burden rests on Plaintiff to demonstrate that he meets the listing. In this case, Plaintiff first argues that he meets Listing 1.04, which provides as follows:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.
> With:
>     A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
>     B.  Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
>     C.  Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging,

> manifested by chronic nonradicular pain and weakness, and
> resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 1.04.  While Plaintiff asserts that he meets this listing, there is substantial evidence in the record that he does not.  First, there must be "compromise of a nerve root or the spinal cord."  However, as Dr. Schooler noted, Plaintiff's two MRIs revealed no nerve or cord compression.  (R. 236-37).  Furthermore, Plaintiff must meet all of the criteria of either section A, B, or C of Listing 1.04.  There is no evidence in the record of a tissue biopsy that revealed spinal arachnoiditis, so Plaintiff cannot meet Listing 1.04B.  Therefore, he is left with the burden of proving that his impairment met Listing 1.04A or C.  Yet, with regard to Listing 1.04A, Dr. Schooler (R. 238) and Dr. Stevenson (R. 253) both found normal strength and sensation.  Additionally, with regard to Listing 1.04C, Dr. Stevenson found that Plaintiff could walk normally, and Plaintiff even indicated to Dr. Stevenson that he could walk a block.  (R. 251-53).  There is, thus, no evidence of an inability to ambulate effectively as required to meet Listing 1.04C.  Consequently, substantial evidence supports the ALJ's decision concerning Listing 1.04.

Plaintiff also briefly argues that Plaintiff's impairment meets Listing 14.09 for inflammatory arthritis, but he cites to no medical evidence to support this claim.  The court has been unable to locate evidence in the record of inflamation or deformity of any of Plaintiff's extremities.  Given the lack of evidence in the record, the ALJ did not commit error by failing to address this listing.

**Issue 3:      Whether the ALJ's RFC findings are supported by substantial evidence.**

Plaintiff also contends that the ALJ erred in his RFC findings. Specifically, Plaintiff argues that the ALJ erred by relying too heavily on the opinions of Dr. Stevenson because she was only a one-time consultative examiner. However, Dr. Stevenson's findings are supported by the findings of Dr. Schooler, the MRI exam results which found no nerve root compromise, and two state agency physicians. There was, therefore, clearly substantial evidence in the record to support the ALJ's RFC findings. In fact, the ALJ conducted an extremely thorough analysis of Plaintiff's RFC and provided support for each and every limitation. The ALJ's RFC findings are supported by substantial evidence.

**Issue 4:      Whether the ALJ's credibility assessment is patently wrong.**

Finally, Plaintiff argues that the ALJ conducted a flawed credibility determination. An ALJ's decision is entitled to special deference because it is the ALJ who has had the opportunity to observe the claimant testifying. *Castile v. Astrue*, 617 F.3d 923, 928-29 (7th Cir. 2010). "Rather than nitpick the ALJ's opinion for inconsistencies or contradictions, we give it a commonsensical reading." *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). An ALJ's decision, therefore, will not be reversed unless it is patently wrong. *Castile*, 617 F.3d at 928-29.

Plaintiff finds fault in the ALJ's credibility determination because of its reliance on Plaintiff's activities of daily living. As the ALJ indicated, Plaintiff retained the ability to use a computer, drive, sweep, mop, vacuum, cook, go grocery shopping, mow grass on a riding lawn mower, and he can attend church

and participate in church services. (R. 24). The ALJ reasonably concluded that these activities of daily living were not consistent with the types of complaints of impairments and disabling pain that Plaintiff alleges he suffers from. However, this was not the extent of the ALJ's credibility determination. The ALJ explained that "the evidence of record does not support the severity reflected in the claimant's subjective allegations." (R. 19). The ALJ went on to explain that examinations by Dr. Stevenson and Dr. Schooler, as well as the opinions of two state agency physicians, did not support Plaintiff's extreme allegations. (R. 21-23). The ALJ did partially credit Plaintiff's complaints of difficulty walking and sitting by limiting Plaintiff to standing four hours, walking four hours, and sitting six hours in an eight-hour work day; the ALJ also added a sit-stand option. (R. 23). The ALJ partially credited Plaintiff's complaints of lower extremity pain by limiting Plaintiff to occasional use of foot controls. (R. 23). The ALJ also limited Plaintiff to only occasionally handling, feeling, and fingering in recognition of Plaintiff's complaints of carpel tunnel syndrome and numbness. The ALJ did this despite objective medical evidence from Dr. Stevenson that revealed that Plaintiff had normal grip strength and normal sensation. (R. 23). Finally, the ALJ reasonably limited Plaintiff to only occasionally stooping and bending, as well as no climbing of ladders/ropes/scaffolds, and limited exposure to unprotected heights or dangerous machinery. (R. 24). The ALJ decided on these limitations because he partially credited Plaintiff's testimony that he suffered pain when bending over and that he had some difficulties with concentration. This was a very thorough credibility determination that is

supported by Plaintiff's activities of daily living, as well as substantial medical evidence in the record. It clearly was not patently wrong and, therefore, must be affirmed.

## VII. Conclusion

The ALJ did not disregard objective medical evidence. Plaintiff's impairment does not meet a listing. The ALJ did not conduct a flawed RFC determination. And, the assessment of Plaintiff's credibility was not patently wrong. The final decision of the Commissioner is, therefore, **AFFIRMED.**

**SO ORDERED.**

**Dated:** September 15, 2011

                                        William G. Hussmann, Jr.
                                        United States Magistrate Judge
                                        Southern District of Indiana

**Electronic copies to:**

Alvin D. Wax
waxa@bellsouth.net

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov